Joshua KELLY, Jose Piña, Andrew Ibarra, Ray Barrios, Randy Enziming-er, Michael Miera, Prisoner A, and Prisoner F, Individually and on behalf of a class of all other persons similar-ly situated, Plaintiffs,

v.

Timothy WENGLER, and Corrections Corporation of America, Inc., Defendants.

Case No. 1:11–CV–185–S–EJL.

United States District Court, D. Idaho.

July 12, 2013.

Ordered Unsealed Aug. 16, 2013.

James D. Huegli, Attorney at Law, Lea Candy Cooper, Richard Alan Eppink, ACLU of Idaho, Boise, ID, Stephen L. Pevar, American Civil Liberties Union, Hartford, CT, for Plaintiffs.

Daniel Patrick Struck, Tara B. Zoellner, Timothy J. Bojanowski, Struck, Wieneke & Love, P.L.C., Chandler, AZ, James R. Stoll, Kirtlan G. Naylor, Naylor & Hales, P.C., Boise, ID, Lisa S. Wahlin, Jones Skelton & Hochuli PLC, Gary Harold Burger, Phoenix, AZ, for Defendants.

## MEMORANDUM DECISION AND ORDER

### (Filed Under Seal)

DAVID O. CARTER, District Judge.

Before the Court is a Motion for a Con-tempt–Phase Discovery Plan (Dkt. 40, 40, "Motion for Discovery") filed by Plaintiffs, and a Motion for an Order to Show Cause Why Defendants Should not be Held in Contempt (Dkt. 39, "Motion for an OSC"). There is also a separate issue, to be re-solved in a later order, about whether the motions and submissions should be un-sealed (*see* Dkt. 50).

### I. Introduction

Plaintiffs seeks a hearing and discovery on the issue of whether Defendant Correc-

tions Corporation of America ("CCA") should be held in civil contempt for violating the Settlement Agreement (Dkt. 25, Ex. A). The issue that spurred Plaintiffs' Motions is that CCA admitted its employees falsified staffing records. Plaintiffs contend those actions violate the Settlement Agreement (and thus the Order Granting Dismissal) and that there are likely more staffing violations than what CCA has admitted. CCA contends that contempt proceedings and further discovery are not appropriate because the Settlement Agreement is "not an 'order' of this Court. It is a private agreement negotiated by the parties." Ds' Response to Plaintiffs' Motions (Dkt. 51) at 2. After Plaintiffs' filed a Motion to Unseal (Dkt. 50), Defendants filed a Response to Plaintiffs' Supplement (Dkt. 54, "Ds' Response to Supplement"), and Plaintiffs filed a further response (Dkt. 55). Further, CCA contends that Rule 70(e), which states that a court may hold a party in contempt for disobeying a judgment, cannot be invoked because there has been no violation of a "judgment." *Id.* Thus, by this argument, Plaintiffs are really arguing for a finding of breach under the Settlement Agreement. *Id.* CCA then contends that while it did breach the agreement, it has taken steps to investigate and fix its mistakes, and that Plaintiffs' proposal for discovery followed by a hearing is an unnecessary step. *See id.* at 9.

For the reasons below, and after having reviewed all submissions and exhibits, this Court GRANTS Plaintiffs' Motion for Discovery, and GRANTS the Motion for an OSC. Further factual contentions will be discussed below.

## II. Analysis

CCA argues that the Court cannot consider contempt because the "Settlement Agreement is not a consent decree." Ds'

Response at 2. This is because the terms were not made part of the Order for Dismissal (Dkt. 26)—either by a provision retaining jurisdiction, or by incorporating the terms of the settlement agreement in the Order for Dismissal. Ds' Response to Supplement at 3 (citing *Kokkonen v. Guardian Life Ins., Co.,* 511 U.S. 375, 381, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994)).

To understand why the Court rejects CCA's position, the Court will first discuss *Kokkonen,* then put the Settlement Agreement in context, and then discuss consent decrees and the Prison Litigation Reform Act.

### a. *Kokkonen*

In *Kokkonen,* the parties (Kokkonen and Guardian Life Insurance) settled a civil, diversity-jurisdiction case during trial. They put their agreement on the record and filed a stipulation and order of dismissal with prejudice. *Id.* at 376–77, 114 S.Ct. 1673. The judge signed the stipulation and order with the notation "It is so ordered." *Id.* at 377, 114 S.Ct. 1673.

Later, the parties disagreed about whether Kokkonen was complying with the agreement. *Id.* Guardian Life Insurance moved to enforce the agreement, and Kokkonen opposed and argued that the court had no subject-matter jurisdiction. The Supreme Court considered whether the district court had jurisdiction to enforce the settlement agreement under an inherent supervisory power. *Id.* One purpose of the doctrine of ancillary jurisdiction is to allow a court to manage its proceedings, "vindicate its authority, and effectuate its decrees." *Id.* at 380, 114 S.Ct. 1673 (citing, among other cases, *Chambers v. NASCO, Inc.,* 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991)). The Supreme Court held that the district court did not have jurisdiction over the motion to enforce the settlement agreement because the only or-

der at issue in the case was simply to dismiss the case. *Id.*

If parties "wish to provide for the court's enforcement of a dismissal-producing settlement agreement, they can seek to do so," the Supreme Court noted. *Id.* at 381, 114 S.Ct. 1673. If the dismissal is pursuant to Federal Rule of Civil Procedure 41(a)(2), which requires dismissal upon "such terms and conditions as the court deems proper," the court could (1) make compliance with the settlement part of the terms of dismissal in the order, or (2) make " 'retention of jurisdiction' over the settlement contract" one of the terms of the dismissal order. *Id.* Either option "has the same effect." *See id.* at 382, 114 S.Ct. 1673. Even if the settlement is by Rule 41(a)(1)(ii), which allows dismissal without court order when the stipulation is signed by all parties who have appeared, "we think the court is authorized to embody the settlement contract in its dismissal order (or, what has the same effect, retain jurisdiction over the settlement contract) if the parties agree." *Id.* at 381–82, 114 S.Ct. 1673. But in *Kokkonen,* there was no such attempt to reserve jurisdiction or embody the settlement contract in the dismissal order: "indeed, it did not so much as refer to the settlement agreement." *Id.* at 377, 114 S.Ct. 1673.

### b. The three-step sequence of Settlement Agreement, Stipulation of Dismissal, and Order for Dismissal

*Kokkonen* examined whether a court continues to have jurisdiction to hear a claim that a settlement was breached. However, CCA does not argue that this court lacks jurisdiction. Rather, CCA cites *Kokkonen* to show that the nature of

the agreement is a private settlement, rather than a consent decree. See Ds' Response at 2.[1]

The Settlement Agreement is a somewhat unusual arrangement. Judge Edward J. Lodge, of the District of Idaho, referred settlement negotiations in this case to this Court, which sits in Idaho by special designation (*see* Dkts. 16, 27). After days and evenings of negotiation in September 2011, the parties came to an agreement that addressed Plaintiffs' allegations of constitutional violations stemming from inmate-on-inmate assaults at the Idaho Correctional Center ("ICC"). Settlement Agreement ¶ 1. By the terms of the Settlement Agreement, "In the event of non-compliance," the parties can seek relief by (A) exchanging letters and meeting and conferring; (B) meeting with the Alternative Dispute Resolution Coordinator; and then, (C), they "shall submit the dispute to the Honorable David O. Carter, who shall have authority to enforce the terms of this agreement in his capacity as a Federal District Court Judge." Id. ¶ 15, (A)-(C). All parties in this case signed the Settlement Agreement, as did this Court (Judge Carter).

Having thus characterized this Court's capacity to enforce the agreement (not merely as an arbitrator, but as "a Federal District Court Judge"), the parties filed a Stipulation of Dismissal.

In that Stipulation of Dismissal, the parties stipulated and "agree[d] that an order shall be entered dismissing this case with prejudice, pursuant to the Settlement Agreement attached as Exhibit A, which is hereby incorporated by the Court." Stip. of Dismissal (Dkt. 25) at 1 (emphasis omit-

---

**1.** Admittedly whether compliance is part of a court's order, thus leading to jurisdiction, has some overlap to whether the resolution amounts to a consent decree. Nonetheless, *Kokkonen's* holding dealt only with jurisdic-

tion, and thus is not the best source for answers about the distinction between consent decrees and private settlements. *See* subsection c, *infra.*

ted). Note that an order of dismissal would not be necessary under Rule 41(a)(1)(ii). But, as the Court in *Kokkonen* noted, even in that circumstance, "the court is authorized to embody the settlement contract in its dismissal order (or, what has the same effect, retain jurisdiction over the settlement contract) if the parties agree." 511 U.S. at 381–82, 114 S.Ct. 1673. The same day, Judge Lodge issued an Order for Dismissal (Dkt. 26). The Order for Dismissal ordered that the case was "dismissed with prejudice pursuant to the Stipulation of Dismissal, which is hereby incorporated by the Court." Order for Dismissal at 1.

So, going in order:

- The parties reached a Settlement Agreement by which they agreed on this Court's capacity to enforce the agreement "in his capacity as a Federal District Court Judge");

- In the next step, the parties' Stipulation of Dismissal, they made clear that
  - They were agreeing that the Court would dismiss the case "pursuant to" the Settlement Agreement, and
  - They were agreeing that the Settlement Agreement, which they attached, would be "incorporated by the Court" in its Order. *See* Stip. Of Dismissal at 1.

- The Court (Judge Lodge) ordered dismissal with prejudice "pursuant to the Stipulation of Dismissal," and that the Stipulation of Dismissal was "hereby incorporated by this Court." Order for Dismissal at 1.

■ Given the summary above, CCA's arguments are not persuasive. CCA argues that Judge Lodge did not "approve the terms of the Settlement Agreement; he merely signed the Order for Dismissal. Although this Court [Judge Carter] signed the Settlement Agreement," a "judge's mere awareness and approval of the terms of the settlement agreement do not suffice to make them part of his order." Ds' Response to Supplement at 3 (citing *Kokkonen,* 511 U.S. at 381, 114 S.Ct. 1673).

Here, the involvement of the Court goes beyond "mere awareness and approval" of a settlement through a later order. The involvement of the Court (Judge Carter) was bargained for by the parties in Paragraph 15; the Court (Judge Carter) signed the Settlement Agreement; the parties, although not needing judicial authority to settle, *see* Fed.R.Civ.P. 41(a)(1)(ii), agreed to terms of dismissal that included dismissal "pursuant to" the Agreement, with the Agreement attached and "incorporated by the Court." Stip. of Dismissal at 1. Judge Lodge's Order for Dismissal then incorporated the Stipulation of Dismissal. This creates a clear chain by which the Settlement Agreement is part of the Court's Order for Dismissal.

CCA's argument that "Although the Settlement Agreement was *attached* to the Stipulation for Dismissal by the parties, the Order for Dismissal does not expressly incorporate its *terms,*" Ds' Response to Supplement at 3 n. 3, makes too much of "terms" as a magic word. *Kokkonen* offered examples of how a court can "embody the settlement contract in its dismissal order," 511 U.S. at 381, 114 S.Ct. 1673. This could be done by "separate provision (such as a provision 'retaining jurisdiction' over the settlement agreement)," or by incorporating "the terms of the settlement agreement in the order." Here, the parties did both: they put a provision in the Settlement Agreement to retain the authority of the Court (Judge Carter) to adjudicate disputes, and they kept the Settlement Agreement as a filed court document, which they agreed to have the Court (Judge Lodge) incorporate into the Order for Dismissal.

CCA also cites a decision by Judge Lodge in *Riggs v. CCA,* 1:09–cv–0010–EJL, a case originally part of *Kelly* until the class action allegations were severed. In ruling about whether to unseal the settlement agreement (Dkt. 214, "*Riggs* Order"), Judge Lodge noted that this Court mediated the settlement, but that the parties did not need the Court (Judge Carter) to approve it. This is consistent with Rule 41(a)(1)(ii), and the discussion above that the parties can *choose* to have a court retain jurisdiction, and can *choose* to make their settlement part of a court's order for dismissal. The parties in that case made such a choice—the parties in *Riggs* did not, *see Riggs* Order at 2—and what matters is the agreement that resolved the case, not the character of the initial assignment of the judge to help mediate settlement.

### i. Reasons this Court can order discovery and hold a hearing

Thus, there are two reasons that this Court has the power to order discovery and to hold hearings. First, simply by the terms of the settlement, Judge Carter has the authority of a District Court Judge to resolve disputes. This authority would reasonably include discovery where necessary, and argument as needed to resolve whether the settlement has been breached. Indeed, CCA concedes as much with their proposal to produce witnesses to explain to the Court the steps it has taken to remedy the violation of the Settlement Agreement. *See* Ds' Response at 9.

Second, based on the discussion in subsection b, it is clear that compliance with the Settlement Agreement is part of the Order for Dismissal. Thus, separately the Court can hear a Motion for Contempt and order discovery related to that issue. *See California Dep't of Soc. Servs. v. Leavitt,* 523 F.3d 1025, 1033 (9th Cir.2008).

### c. PLRA and Consent Decrees

The parties stipulated that the terms of their agreement "extend no further than necessary to satisfy the requirements of 18 U.S.C. § 3626(a)(1)(A)." Settlement Agreement ¶ 1. The statutory reference is to part of the Prison Litigation Reform Act (the "PLRA").[2] The PLRA "outlines appropriate remedies in civil litigation regarding prison conditions." *Hines v. Anderson,* 547 F.3d 915, 917 (8th Cir.2008) (citing 18 U.S.C. § 3626). Thus, the parties invoked the framework of, and compliance with, the PLRA in defining their agreement.

It would thus seem logical to turn to the PLRA and related cases as an informative backdrop for whether this is a consent decree. The Ninth Circuit has said in this context that "the key distinction between a private settlement and a consent judgment" is that "courts are bound to enforce the terms" of consent decrees. *Gilmore v. People of the State of California,* 220 F.3d 987, 995 (9th Cir.2000). The Second Circuit, sitting en banc, has noted that an agreement leading to a consent decree usually sets out "actions and forbearances to which the defendant agrees," and then conditions the settlement "on being so-ordered by the court." *Benjamin v. Ja-*

---

**2.** The cited section, titled "Prospective relief," states that such "relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, ex-tends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief."

cobson, 172 F.3d 144, 157 (2d Cir.1999). Here the parties could have reached agreement without court involvement, but instead agreed to an arrangement by which Defendant agreed to take certain steps, with authority vested in the Court to enforce those promises. They then asked the Court to end the case, pursuant to their agreement to incorporate the Settlement Agreement.

The Second Circuit further noted that, according to the PLRA, settlements and private agreements are mutually exclusive:

> A consent decree is defined as relief "entered by the court," 18 U.S.C. § 3626(g)(1), and it is well established that a federal court ordinarily has the power to enforce its own orders and judgments, see, e.g., Peacock v. Thomas, 516 U.S. 349, 356–57, 116 S.Ct. 862, 133 L.Ed.2d 817 (1996); Shillitani v. United States, 384 U.S. 364, 370, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966). A private settlement agreement, in contrast, is defined as relief that is "not subject to judicial enforcement." 18 U.S.C. § 3626(g)(6).

Benjamin, 172 F.3d at 157 (parallel citations omitted). This distinction, and the Settlement Agreement's invocation of the PLRA, appears to further support finding that contempt is an appropriate way for this Court to enforce the promises CCA made. However, because the Parties did not discuss this aspect in their briefing, the Court goes no farther than to outline this issue as further support.

### III. Appropriateness of further discovery and contempt proceedings

CCA admits "mandatory posts were not staffed for 4,778 hours during a seven[ ]-month period in 2012." Ds' Response at 8. But it contends it has fixed the isolated problems caused by a few employees, and "[t]he only thing that Plaintiff's' proposed discovery may reveal is more undocu-mented hours in the past." Id. Such discovery "is not helpful to enforce the Settlement Agreement prospectively." Id. at 9.

It is a mystery why CCA believes it does not have to fully account for past actions that violate the Settlement Agreement (and the Court's Order incorporating that Agreement). CCA admits that employees falsified shift rosters, and states that their review of records "focused on staffing during the night shift." Id. at 5. CCA does not say its investigation looked at staffing at other times—indeed, it states that it "has never represented that the reported number of undocumented hours was anything more than" the falsified hours it found from reviewing the night shift. See id. at 8.

Plaintiffs have brought forth affidavits from two current CCA employees and one former employee, all alleging more unfilled posts than CCA has admitted to. Upon review of those affidavits (Dkts. 41–43), the Court notes that the allegations appear to be verifiable if Plaintiffs can depose CCA witnesses and examine CCA records. For example, if CCA counted employees with little security training as having manned watch posts, records could show this. If employees were listed on more than one post, or listed as on duty when they were elsewhere, this should be provable. Given CCA's admissions, Plaintiffs must have a fair opportunity to examine whether there are more violations. Only then can the Court decide on the appropriate remedy.

### IV. Conclusion

For the above reasons, Plaintiff's Motion for Discovery and Motion for an OSC are both GRANTED. The Court orders Defendants to show cause why they should not be found in breach of the Settlement Agreement, and/or in contempt of the

Court's Order for Dismissal that incorporated the Settlement Agreement.

A hearing on this matter is set for August 7, 2013, and continuing to August 8 if necessary, beginning at 8:30 a.m., 6th Floor, Courtroom # 1, of the James A. McClure Federal Building and U.S. Courthouse, in Boise, Idaho. Because the hearing dates approach quickly, Plaintiffs Motion for Discovery is GRANTED to the extent that the Court will approve the depositions and number of interrogatories Plaintiffs propose, but the deadlines must be revised. Plaintiffs and Defendants are thus ordered to confer and file a joint status report by Tuesday, July 16, 2013, that sets out their plans to complete discovery in time for the hearing.