# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-2102

_____

|  |  |  |
|---|---|---|
| Howard Lansing Hines; Robert Monge; Emil Johnson; Wardell Hicks; and on behalf of all others similarly situated, | * * * * | |
| | * | Appeal from the United States |
| Appellants, | * | District Court for the |
| | * | District of Minnesota. |
| v. | * | |
| | * | |
| Wendell Anderson; Kenneth Schoen; James Cicero; Warren Lawson; Bruce McManus, | * * * | |
| | * | |
| Appellees. | * | |

_____

Submitted: May 14, 2008
Filed: November 21, 2008

_____

Before WOLLMAN, BEAM, and BYE, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Howard Hines and other similarly situated inmates (Inmates) at the Minnesota Correctional Facility at Oak Park Heights in Stillwater, Minnesota (Oak Park Heights

Facility), appeal from the district court's[1] order terminating the Hines Consent Decree (decree) that regulated prison medical care. We affirm.

I

In 1973, inmates at the Minnesota Correctional Facility at Stillwater filed a class action suit against Minnesota state actors and prison officials pursuant to 42 U.S.C. § 1983, alleging that the medical care provided at the prison violated the Eighth and Fourteenth Amendments to the United States Constitution. Following negotiations, and with neither party making any admissions, the parties agreed to a consent decree that set medical care standards for the prison. The district court issued the decree on May 27, 1977. Hines v. Anderson, 439 F. Supp. 12 (D. Minn. 1977). Since March 1999, the decree has applied exclusively to the Oak Park Heights Facility.

In 1996, Congress enacted the Prison Litigation Reform Act (PLRA), which outlines appropriate remedies in civil litigation regarding prison conditions. 18 U.S.C. § 3626. Section 3626(b) of the PLRA addresses the termination of relief and applies retroactively to prospective relief that was entered before the statute's enactment. § 3626(b)(1)(A)(iii). It also allows for the immediate termination of prospective relief "in the absence of a finding by the court that the relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation." § 3626(b)(2). The district court cannot terminate the prospective relief, however, if it makes such findings. § 3626(b)(3).

---

[1]The Honorable Patrick J. Schiltz, United States District Judge for the District of Minnesota.

On August 22, 2002, the Commissioner of the Minnesota Department of Corrections (Department) moved to terminate the decree pursuant to § 3626(b). Initially, the district court concluded that it did not have jurisdiction to terminate the decree and dismissed the motion without prejudice. We reversed that order and remanded the case on December 15, 2003. See Hines v. Anderson, 83 Fed. Appx. 148 (8th Cir. 2003). On November 4, 2004, the magistrate judge[2] to whom the case was assigned issued a report and recommendation that the district court grant the Department's motion to terminate the decree. After reviewing their objections, the district court granted the Inmates leave to engage in additional discovery for the purpose of presenting evidence of ongoing Eighth Amendment violations at the Oak Park Heights Facility. The order permitted the parties to take five depositions each and serve twenty-five interrogatories. It further allowed the Inmates to file unlimited pro se submissions until September 1, 2005, and to retain a medical expert whose expenses of up to $7,000 would be paid by the defendants.

Following discovery, both parties submitted supplemental memorandums and exhibits with respect to the motion to terminate the decree. The Inmates filed the report prepared by their expert, and individual inmates filed numerous submissions regarding the alleged inadequacies of their medical care. In turn, the Department submitted the medical records pertaining to those individuals. The matter was again submitted to the magistrate judge for review.

The claims in the Inmates' declarations typically described personal experience with deficient medical care as well as general complaints such as staff shortages, delays in receiving medication, and the unfairness of the $3.00 co-pay for medical services. After evaluating the evidence, the magistrate judge submitted a forty-six-page report and recommendation detailing the procedural history of and the factual

---

[2]The Honorable Arthur J. Boylan, United States Magistrate Judge for the District of Minnesota.

foundation for the parties' respective positions. The report addressed each of the individual inmate's declarations. We highlight a few of the individual submissions below.

Inmate No. 1 complains that he has a painful lump in his left breast.[3] He notified health services of the lump in early April 2005 and was not examined until May 27, 2005. Health services ordered laboratory tests that revealed the lump was benign, but Inmate No. 1 was not notified of the cause of the lump or the outcome of the examination. In response to the inmate's grievance, the Department acknowledged that there was no indication that this information was conveyed to him. Although the inmate wanted the lump removed, health services concluded that surgery was not appropriate.

Inmate No. 15 has a history of unstable mental health. On June 9, 2005, he cut his left arm with a staple and inserted an ink pen under the skin. After a nurse discovered this, she bandaged his arm and placed him on observation status. The following day, the inmate was taken to health services for x-rays and an examination by Stephen J. Craane, M.D. The inmate complains that Dr. Craane did not immediately remove the pen and instead left it in place for more than two weeks. In his affidavit, Dr. Craane states that the pen was not in contact with any nerves or blood vessels and that he chose to leave it in place after weighing the risks of bleeding and infection that might result from removing it. Once the area became inflamed, Dr. Craane conducted a surgical procedure to remove the pen.

Inmate No. 16 has a history of kidney failure and receives dialysis three days per week at the prison. He alleges that the nurses are inattentive, that a technician rather than a nurse performs the dialysis, that officials do not wash their hands prior

---

[3]The Inmates' declarations are identified by number to ensure the confidentiality of their medical records.

to handling the equipment, that officials allow blood to clot in the dialysis machine, and that prison personnel do not properly clean spilled fluids. The Department has since investigated the inmate's concerns and the Health Services Administrator has met with the dialysis service provider. The Health Services Administrator now provides increased supervision and communication and maintains regular contact with the provider.

At least nine current inmates criticize the lack of care they are receiving for Hepatitis C. In each of these cases, the inmate notes that he is not getting proper treatment for the disease. The Department explained that it follows its "Hepatitis C Treatment Eligibility Criteria and Antiviral Treatment Guidelines." These guidelines require that certain criteria, such as significantly elevated liver function levels, must be met before health services provides treatment to those diagnosed with Hepatitis C. Because the inmates in question did not meet the standards set forth in the Guidelines, the Department did not provide treatment.

The report noted that "the strongest comment offered by the expert is that he had found several examples of substandard care," but went on to find that the expert's submission did not support the Inmates' argument that there were current and ongoing Eighth Amendment violations. Additionally, the report found that the Inmates' declarations did not establish the existence of such violations. Further, the report found that "the record established through individual prisoner complaints does not represent evidence in support of ongoing violation[s] of Eighth Amendment rights to medical care with respect to medications, co-pays, or treatment." Finally, the report found that the decree was "the antithesis of narrowly constructed," that it was "broad and comprehensive, addressing concerns that are certainly related, but largely ancillary to core Eighth Amendment medical treatment issues." The report concluded by recommending that the decree be terminated.

After conducting a de novo review, the district court adopted the report and denied the Inmates' request for further discovery and an evidentiary hearing. It is from this judgment that the Inmates now appeal.

II

The Inmates argue that the district court failed to make findings of fact as required by Federal Rule of Civil Procedure 52(a). We review a district court's failure to make findings of fact pursuant to Rule 52(a) for abuse of discretion. Darst-Webbe Tenant Assoc. Bd. v. St. Louis Housing Auth., 339 F.3d 702, 711 (8th Cir. 2003). Rule 52(a) states that "[i]n an action tried on the facts without a jury or with an advisory jury, the court must find the facts specially and state its conclusions of law separately." The rule "generally requires findings of fact and conclusions of law for rulings on injunctions, but not on motions." Cody v. Hillard, 139 F.3d 1197, 1200 (8th Cir. 1998). Regardless of whether a motion to terminate a consent decree is more like an injunction than a typical motion, we conclude that the district court made findings sufficient to satisfy Rule 52(a).

III

The Inmates argue that because they have a property interest in the decree, the Due Process Clause and the PLRA required that further expert investigation be conducted and an evidentiary hearing held prior to termination. In Gavin v. Branstad, we concluded that prisoners do not have vested rights in a consent decree. 122 F.3d 1081, 1091 (8th Cir. 1997). Because a consent decree provides prospective relief and can be modified to adapt to changing circumstances, it is not a final judgment. Id. at 1087. A vested right, and by extension due process protections, is dependent upon the existence of a final judgment. Id. at 1090-91. Accordingly, because the decree does not constitute a final judgment, the Inmates have no property right therein that would

entitle them under the due process clause to further discovery and a pretermination evidentiary hearing.

Likewise, the PLRA does not require a pretermination investigation and evidentiary hearing. To the contrary, it is the absence of findings that requires the termination of prospective relief.[4] The statute requires findings only when the district court is inclined to maintain the consent decree. "Written findings based on the record" are explicitly required to avoid termination of the relief. 18 U.S.C. § 3626(b)(3). Under the statute, the defendants are entitled to termination when the district court that entered the relief did not make the requisite findings. § 3626(b)(2). Thus, the PLRA does not require any additional discovery or due process where termination is ordered.

This conclusion is consistent with our previous holdings on the issue. As stated in Harvey v. Schoen, "[w]hile district courts should allow prisoners to supplement the record with evidence of current practices to prove a current and ongoing violation," as the district court did here, "they are not required to grant discovery requests in every case." 245 F.3d 718, 721 (8th Cir. 2001). The district court allowed the Inmates to conduct additional discovery, hire an expert witness (albeit with a limited budget), and submit unlimited prisoner declarations; neither the Due Process Clause nor the PLRA mandates the right to additional discovery and a pretermination hearing.

---

[4]The PLRA states that

> a defendant or intervener shall be entitled to the immediate termination of any prospective relief if the relief was approved or granted in the absence of a finding by the court that the relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right.

18 U.S.C. § 3626(b)(2).

Finally, the Inmates argue that the record does not support the district court's decision to terminate the decree because current and ongoing Eighth Amendment violations exist that the decree is narrowly tailored to remedy. The district court's determination as to whether an ongoing constitutional violation exists is a mixed question of fact and law. We review factual findings for clear error and issues of law de novo. Feliciano v. Rullan, 378 F.3d 42, 52-53 (1st Cir. 2004). The PLRA prohibits termination of prospective relief when

> the court makes written findings based on the record that prospective relief remains necessary to correct a current and ongoing violation of the Federal right, extends no further than necessary to correct the violation of the Federal right, and that the prospective relief is narrowly drawn and the least intrusive means to correct the violation.

18 U.S.C. § 3626(b)(3). Whether an Eighth Amendment violation exists and whether the decree is narrowly tailored are independent issues. If either is lacking, the district court may terminate the decree.

A

Under the Eighth Amendment's proscription against "cruel and unusual punishments," prison officials must provide medical care to inmates. Estelle v. Gamble, 429 U.S. 97 (1976). Failure to provide medical care to prisoners amounts to a constitutional violation only when the plaintiffs show "(1) that they suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs." Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997) (citing Coleman v. Rahija, 114 F.3d 778, 784 (8th Cir. 1997)); see also Farmer v. Brennan, 511 U.S. 825 (1994). The plaintiffs must also demonstrate that the violation is current and ongoing. Farmer, 511 U.S. at 845-46. An official who

acts reasonably, though through hindsight is found to have acted incorrectly, has not violated the Eighth Amendment. Thus, medical malpractice claims do not necessarily constitute Eighth Amendment violations. Dulany, 132 F.3d at 1243. Likewise, "[i]nmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment." Id. at 1239.

The Inmates allege numerous problems with the medical care provided at the Oak Park Heights Facility, including violations of the Department's policies, inadequate staffing, and delays in responding to requests for medical care, refilling prescriptions, and obtaining specialty care. Although these claims point to alleged deficiencies in the health care provided to the Inmates, in the absence of evidence of deliberate disregard such deficiencies do not amount to Eighth Amendment violations. The Inmates' reliance on Hadix v. Caruso, 465 F. Supp. 2d 776 (W.D. Mich. 2006) is misplaced, for that case involved allegations that prison officials were violating a consent decree, not a motion to terminate the decree. This distinction is particularly relevant where, as here, the district court found the decree to be far more expansive than necessary to remedy Eighth Amendment violations. In such cases, the existence of a violation of the decree does not necessarily amount to a constitutional violation.

The Inmate's allegations go beyond complaints concerning the routine administration of medical care. Several inmates filed declarations detailing deficiencies in the medical care provided to meet their serious medical needs. Whatever these deficiencies, however, the record does not show a current and ongoing deliberate disregard for those needs. Although medical experts may question, for example, whether it is medically appropriate to leave a pen in a patient's arm in order to avoid infection, disagreements about the appropriate course of treatment do not rise to the level of Eighth Amendment violations. While some inmates believe that they should be treated for Hepatitis C, the Department has guidelines in place to determine when treatment is necessary. There is no evidence that the use of these guidelines is

resulting in harm or that the Department is deliberately disregarding Hepatitis C diagnoses. Likewise, with respect to the earlier-described allegations by Inmate No. 16 regarding the series of problems with the provision of dialysis at the Oak Park Heights Facility, the Department responded with an investigation and increased supervision to remedy the conditions complained of. Overall, the record presents a picture of what at times may well have constituted less than optimum care, but it fails to show current and ongoing deliberate disregard of the inmates' serious medical needs. In the absence of evidence supporting a constitutional violation, the district court had no basis on which to make the findings the PLRA requires as a condition precedent to the maintenance of the decree.

The Inmates also argue that the district court's determination that no ongoing constitutional violations exist should be reversed because the report relied upon our earlier case, Jorden v. Farrier, 788 F.2d 1347 (8th Cir. 1986), for the standard of deliberate indifference, rather than the Supreme Court's more recent case, Farmer v. Brennan. The result, however, remains the same. Jorden states "that the deliberate indifference to a serious medical need must rise to the level of an unnecessary and wanton infliction of pain." 788 F.2d at 1348. Likewise, Farmer recognized "the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" 511 U.S. at 834 (quoting Wilson v. Seiter, 501 U.S. 294, 297 (1991)). Although the Supreme Court clarified that there is a subjective component to the deliberate indifference standard—the prison official must actually know of the serious risk of harm—it did not overrule Jorden. Id. at 832, 837.

B

The district court's finding that the decree was not narrowly tailored nor the least intrusive means is a separate and independent basis on which to terminate the decree. The Inmates assert that they have a fundamental right to adequate medical care and that the decree satisfies the PLRA because it "embod[ies] ordinary medical

standards enjoyed by civilian populations." The Inmates overstate the protection afforded by the Eighth Amendment and consequently understate the requirements of the PLRA. The Eighth Amendment does not guarantee all prisoners medical care commensurate with that enjoyed by civilian populations.

The report concluded that the decree was not narrowly drawn to address a particular medical problem that existed at the time but instead covered the topic of medical care generally. For example, the report noted that the decree required medical examinations, including specific tests and procedures, for new inmates; allowance to participate in public mass immunization programs; and the opportunity to have exit medical examinations and private examinations at an inmate's expense. Further, the decree outlined the circumstance in which medical care must be provided and described the types of surgical care that may be performed at the prison. The federal right at issue here, however, is the right to reasonable medical care in the face of a known substantial risk of harm to the inmate. Farmer, 511 U.S. at 847. The type of day-to-day oversight on all aspects of medical care encompassed in the decree is broader than necessary to assure protection of this right. Although the Inmates argue that the decree should be modified if the requisite findings cannot be made, *sua sponte* modification is not an alternative under the PLRA.

V

We conclude that the district court made sufficient findings and that these findings were not clearly erroneous. Neither the Due Process Clause nor the PLRA required additional discovery. Because the evidence did not establish the existence of ongoing Eighth Amendment violations and the decree was not narrowly tailored or the least intrusive means to protect the Inmates' Eighth Amendment rights, the district court did not err in terminating the decree.

The judgment is affirmed.

_____