NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued January 9, 2009
Decided October 2, 2009

**Before**

DANIEL A. MANION, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

| | |
|---|---|
| No. 08-2167 | |
| | Appeal from the United States District |
| SYLVESTER WILLIAMS, JR., | Court for the Northern District of Illinois, |
| *Plaintiff-Appellant*, | Eastern Division. |
| | |
| *v.* | No. 06 C 6853 |
| | |
| GERALDO GUZMAN, et al., | George W. Lindberg, |
| *Defendants-Appellees*. | *Judge*. |

**O R D E R**

Sylvester Williams filed suit under 42 U.S.C. § 1983, claiming that medical staff at the DuPage County Jail were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. The district court granted summary judgment to the defendants, and we affirm.

This case centers on Williams' problems with the medical treatment he received while in jail. The first condition for which he claims he received inadequate care was severe pain in his feet. Before arriving at the jail in April 2005, he had been diagnosed with peripheral neuropathy in his lower extremities and prescribed Amitriptyline for neuropathic pain. Williams informed the jail's medical staff of his need for Amitriptyline. Nurse Kathe Pava verified Williams' Amitriptyline prescription with his neurologist and noted in his medical chart that the next nurse on duty should follow up with a jail physician

because only physicians have authority to order prescriptions.  Later, Dr. Evaristo Aguinaldo, a part-time physician at the jail, examined Williams and found his symptoms to be consistent with neuropathy of the feet.  But because he was unfamiliar with peripheral neuropathy, Dr. Aguinaldo decided to get records from Williams' neurologist before prescribing any medication.

In May 2005, after examining Williams and speaking with his neurologist, Dr. Geraldo Guzman, the jail's Medical Director, ordered Amitriptyline.  When he still had not received Amitriptyline one month later, Williams submitted a written grievance, seeking use of a wheelchair and complaining that the jail's medical staff was ignoring his foot pain.  Deputy Martin Manion,[1] a grievance officer at the jail, relied on Dr. Guzman's assessment that Williams did not need a wheelchair and denied the request.  Dr. Guzman, upon learning that Williams had not received the Amitriptyline, resubmitted his order.  Williams did not receive his first dose of Amitriptyline until late June or early July 2005.

The second condition for which Williams claims he received inadequate care was an injury to his left eye.  In April 2005, Nurse Barbara Fanta examined Williams after he complained of falling in his cell and injuring his left eye, but she found no sign of eye injury.  In the following weeks, Dr. Guzman, Dr. Aguinaldo, and Nurse Pava also found no problem with his left eye.  Nonetheless, in May 2005, Dr. Guzman referred Williams to the Wheaton Eye Clinic because of his persistent complaints of vision problems in his left eye.  In July 2005, an ophthalmologist at the Wheaton Eye Clinic diagnosed Williams with a partially dislocated left lens and performed surgery to remove the lens.  The record does not reveal why Williams was not seen at the clinic until July, but the ophthalmologist opined that the outcome of the procedure would have been the same regardless of when Williams received treatment.

In late 2006, Williams sued Dr. Guzman, Dr. Aguinaldo, Nurse Pava, Nurse Fanta, and Deputy Manion for being deliberately indifferent to his foot pain and eye injury.  He claimed, first, that the defendants did not give him Amitriptyline until late June or early July 2005 despite knowing since April 2005 that he needed this medication to control severe neuropathic pain in his feet.  Second, Williams claimed that the defendants knew that he had injured his left eye but nonetheless delayed providing necessary ophthalmic care.

The district court granted summary judgment to the defendants, concluding that there was nothing in the record, either regarding Williams' Amitriptyline prescription or his eye appointment, that reflected deliberate indifference.  The court found that Deputy

---

[1] Deputy Manion is not related to Judge Daniel A. Manion.

Manion reasonably relied on the opinion of medical staff in resolving Williams' grievance; that the nurses had insufficient involvement in Williams' medical care, and lacked knowledge that he was not receiving Amitriptyline; that Williams did not establish a serious medical need for Amitriptyline to necessitate Dr. Aguinaldo ordering the medication; and that Dr. Guzman did not know either that Williams was not receiving Amitriptyline after he ordered it in May 2005, or that his appointment with the Wheaton Eye Clinic was delayed.

We review the district court's decision <u>de novo</u>, construing all factual inferences in Williams' favor. *See Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008); *Greeno v. Daley*, 414 F.3d 645, 651 (7th Cir. 2005). Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED R. CIV. P. 56(c); *Dale v. Poston*, 548 F.3d 563, 568-69 (7th Cir. 2008).

On appeal, Williams argues that the district court incorrectly rejected his deliberate-indifference claim by concluding that he did not have a serious medical need for Amitriptyline. He points to deposition testimony by his neurologist and Dr. Guzman as confirmation that he needed Amitriptyline to treat severe neuropathic pain in his feet. Although we have no precise test to assess when a plaintiff's medical need is sufficiently serious, our standard contemplates a condition that has been diagnosed by a doctor as requiring treatment or one that is so obvious that even a lay person would perceive the need for medical treatment. *Greeno*, 414 F.3d at 653; *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). Given his neurologist's prescription for Amitriptyline to treat the pain associated with peripheral neuropathy, we do not question Williams' serious medical need for the medication.

To establish deliberate indifference, however, a plaintiff must show not only that his medical need was serious but also that "a state official was deliberately, that is subjectively, indifferent." *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008). Williams contends that Dr. Guzman and Dr. Aguinaldo were deliberately indifferent for failing to act on Nurse Pava's note for medical follow-up on his Amitriptyline prescription. He insists that the doctors had a duty to read his medical chart, and their failure to exercise this duty establishes deliberate indifference. Williams cannot, however, point to evidence showing that the doctors' disregard of Nurse Pava's note reflected the requisite "culpable state of mind." *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Greeno*, 414 F.3d at 653. With no evidence that the doctors knew about the note and deliberately disregarded it, failure to review the nurse's note is at most negligence, which is insufficient to establish deliberate indifference. *See Boyce v. Moore*, 314 F.3d 884, 889 (7th Cir. 2002) (explaining that guard's negligent failure to review jail logbooks would not constitute deliberate indifference); *Stewart v. Murphy*, 174 F.3d 530, 536 (5th Cir. 1999) (in certain circumstances, doctor's failure

to read nurse's notes might constitute negligence but not necessarily deliberate indifference).

Williams then argues that the doctors' decision to confirm his Amitriptyline prescription with his neurologist raised a triable issue as to whether they deliberately disregarded his continued pain and suffering. But we defer to a medical professional's treatment decisions "unless 'no minimally competent professional would have so responded under those circumstances.'" *Sain v. Wood*, 512 F.3d 886, 894-95 (7th Cir. 2008). Williams points to no evidence that might suggest the doctors acted unreasonably by not ordering Amitriptyline before first verifying Williams' condition and the prescription with his neurologist. *See Farmer*, 511 U.S. at 844 ("[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted."); *Walker v. Peters*, 233 F.3d 494, 500 (7th Cir. 2000) (approving as reasonable mandatory HIV testing as prerequisite for dispensing of drug to treat HIV/AIDS).

Williams similarly suggests that the doctors' delay in providing him Amitriptyline raises a fact issue concerning their deliberate indifference. He argues that the doctors knew of his need for Amitriptyline but nonetheless denied him the medication for his first three months in custody, causing him severe pain. It is true that delays in treating painful medical conditions may support a deliberate-indifference claim, *Rodriguez v. Plymouth Ambulance Serv.*, No. 06-4260, 2009 WL 2498580, at *9 (7th Cir. Aug. 18, 2009); *Walker v. Benjamin*, 293 F.3d 1030, 1040 (7th Cir. 2002), *Gutierrez*, 111 F.3d at 1371, but a plaintiff must also show that the defendants deliberately disregarded the harm caused by the delay, *Gil v. Reed*, 381 F.3d 649, 661-62 (7th Cir. 2004); *Hines v. Anderson*, 547 F.3d 915, 920-21 (8th Cir. 2008). Here, however, Williams cannot show that the doctors were aware of the delay in getting him Amitriptyline. Indeed, the record reflects that as soon as Dr. Guzman learned that Williams had not been receiving Amitriptyline, he placed a second order for the medication.

Williams contends that he established a triable issue regarding the doctors' deliberate indifference to his left-eye injury when they misdiagnosed his eye problem and disregarded the two-month delay in his being seen at the Wheaton Eye Clinic. But even if the doctors misdiagnosed his eye problem, a misdiagnosis is insufficient to satisfy the subjective component of a deliberate-indifference claim because, here, the doctors had no knowledge of any risk to Williams' left eye. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006) (it is not enough to show that a doctor should have known that surgery was necessary; rather, the doctor must know that the surgery was necessary and then consciously disregard that need in order to be held deliberately indifferent); *Self v. Crum*, 439 F.3d 1227, 1234 (10th Cir. 2006). As for the delay

in his eye appointment, Williams did not demonstrate that the doctors were aware of any harm caused by the delay, *see Hines*, 547 F.3d at 920-21, nor did he rebut the opinion of the clinic's ophthalmologist that the delay in treatment did not affect the outcome of the procedure.

Williams next argues that Nurse Pava and Nurse Fanta were deliberately indifferent by not checking whether doctors had ordered Amitriptyline and by disregarding the delays in his receiving Amitriptyline and seeing an ophthalmologist. But there is no evidence that the nurses acted with any culpable state of mind because they played no part in the doctors' treatment decisions, and nothing in the record suggests that they had authority to refer inmates to outside specialists. *See Johnson v. Snyder*, 444 F.3d 579, 586 (7th Cir. 2006); *Comstock v. McCrary*, 273 F.3d 693, 712 (6th Cir. 2001); *Camberos v. Branstad*, 73 F.3d 174, 177 (8th Cir. 1995).

Finally, Williams argues that Deputy Manion acted with deliberate indifference by failing to investigate the complaints in his written grievance before denying it. But as the district court explained, Deputy Manion reviewed Williams' complaints and was entitled to rely on the professional opinions of the jail's medical staff in responding to the grievance. *See Hayes v. Snyder*, 546 F.3d 516, 527 (7th Cir. 2008); *Greeno*, 414 F.3d at 657. Because Williams provides no evidence that Deputy Manion had reason to believe he was not receiving adequate medical care, Deputy Manion's denial of his grievance cannot serve as a basis for a deliberate-indifference claim. *See Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009); *George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007).

AFFIRMED.