**Catherynne KENDRICK, ADC # 708204, Plaintiff**

v.

**Nurzuhal FAUST, et al., Defendants.**

**Case No. 1:07CV00025 JMM/BD.**

United States District Court,
E.D. Arkansas,
Northern Division.

Jan. 6, 2010.

Catherynne W. Kendrick, Wrightsville, AR, pro se.

## ORDER

JAMES M. MOODY, District Judge.

The Court has received the Partial Recommended Disposition from Magistrate Judge Beth Deere. After careful review of the recommendation, the timely objections received thereto, as well as a *de novo* review of the record, the Court concludes that the Partial Recommended Disposition should be, and hereby is, approved and adopted as this Court's findings in all respects in its entirety.

The Court recommends that Defendants' motion for summary judgment (# 338) be GRANTED in part, and DENIED in part. Plaintiff should only be allowed to proceed on her claims that: (1) Defendants Donavion and Dixon violated her first amendment right to freedom of religion by destroying Plaintiff's Catholic Bible; and (2) Defendants Capel, Dixon, Zomant, and Donavion violated her first amendment right to freedom of religion by denying her access to her rosary beads and her religious self-help book. Plaintiff's remaining claims are DISMISSED with prejudice.

## PARTIAL RECOMMENDED DISPOSITION

BETH DEERE, United States Magistrate Judge.

### I. *Procedures for Filing Objections:*

The following partial recommended disposition has been sent to United States District Judge James M. Moody. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from receipt of the recommendations. A copy will be furnished to the opposing party. Failure to file timely objections may result in a waiver of the right to appeal questions of fact.

Mail your objections and/or request for a hearing to:

Clerk, United States District Court

Eastern District of Arkansas

600 West Capitol Avenue, Suite A149
Little Rock, AR 72201–3325

## II. *Background:*

Plaintiff filed this action pro se under 42 U.S.C. § 1983 against employees of the Arkansas Department of Correction ("ADC"). In her original Complaint, Plaintiff claimed: (1) that ADC officials violated her right to receive legal mail and to access the courts; (2) that ADC officials falsely accused her of an escape; and (3) that ADC officials had "interfere[d]" with "child custody."

By Order of this Court dated August 15, 2007, 2007 WL 2343835, Plaintiff's claim that ADC officials falsely accused her of escape and her parental interference claim were dismissed without prejudice. (Docket entry # 31) Plaintiff was allowed to proceed on her claim that ADC officials interfered with her legal mail and right to access the courts, but only as to those against whom she made specific allegations.

Plaintiff's First Amended Complaint and the two Addendums to her First Amended Complaint consist of nearly 250 handwritten pages. (# 66, # 71, and # 74) Reading these pleadings liberally, the Plaintiff alleges the following: (1) Defendants violated her right to access the courts by interfering with her legal mail; (2) Defendants used excessive force against her; (3) Plaintiff was subjected to terroristic threats and public humiliation by Defendants in retali-

ation for filing the instant lawsuit; (4) Defendants failed to protect Plaintiff from the sexual assaults by other inmates; (5) Plaintiff's conditions of confinement violate the constitutional prohibition against cruel and unusual punishment; (6) Plaintiff was forced to serve time in administrative segregation for an unwarranted charge; (7) Plaintiff was forced to stand nude in front of male correctional officers on at least one occasion, in violation of her fourth amendment rights; (8) Plaintiff was discriminated against based upon her gender; (9) Plaintiff was discriminated against based upon her religion; (10) Defendants violated multiple ADC policies in failing to respond to Plaintiff's grievances in a timely manner; (11) Defendants acted with deliberate indifference to Plaintiff's medical needs; (12) Defendants violated Plaintiff's freedom of speech; and (13) Plaintiff was denied due process in her disciplinary hearings.[1] In addition, Plaintiff again stated that Defendants falsely accused her of escape.[2]

An evidentiary hearing was held in this matter on October 28, 2008. At that time, Plaintiff was provided the opportunity to explain her claims and to provide evidence to support those claims.

On June 30, 2009, Defendants filed a motion for summary judgment. (# 338) In the motion, Defendants contend that each of Plaintiff's claim fail as a matter of law. Plaintiff has now responded to the Defendants' motion.[3] Based upon the evidence

---

1. Since the motion for summary judgment was filed, Plaintiff moved to have the following claims dismissed: (1) her unwarranted placement in administrative segregation; (2) gender discrimination; (3) violation of her first amendment right to freedom of speech; and (4) violation of her due process rights during her disciplinary. In addition, Plaintiff moved to have Christy Townsend, Martin Pope, and Amanda Dutton–Jackson dismissed as party Defendants. The District Court

granted Plaintiff's motions. (# 376 and # 378) As a result, those claims and the claims relating to those individuals will not be addressed in this recommendation.

2. Because this claim was previously dismissed by the Court, it will not be addressed in this recommendation. (# 31)

3. The Court notes that in Plaintiff's response to the Defendants' motion, she lists Kenneth

presented, the Court concludes that the Defendants' motion (# 338) should be GRANTED in part, and DENIED in part.[4]

### III. *Discussion:*

#### A. *Standard*

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact. FED. R.CIV.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 246, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Once the moving party has successfully carried its burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the pleadings and by depositions, affidavits, or otherwise, designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Mosley v. City of Northwoods,* 415 F.3d 908, 910–11 (8th Cir.2005) ("The nonmoving party may not rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.") If the opposing party fails to carry that burden or fails to establish the existence of an essential element of its case on which that party will bear the burden of proof at trial, summary

judgment should be granted. See *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548.

#### B. *Access to the Courts*

 Plaintiff first claims that Defendants Capel, Dixon, McGinnis–Douglas, Donavion, Martin, and Steed violated her constitutional right to access the court by interfering with her legal mail. To establish such a violation, Plaintiff must prove that she was not given the opportunity to litigate a claim, which resulted in actual injury. *White v. Kautzky,* 494 F.3d 677, 680 (8th Cir.2007). To prove actual injury, the prisoner must "demonstrate that a non-frivolous legal claim [was] frustrated or ... impeded." *Id.* An allegation, however, that prison officials opened legal mail outside of inmate's presence is sufficient to state a constitutional claim. *Powells v. Minnehaha County Sheriff Dep't,* 198 F.3d 711, 712 (8th Cir.1999). Legal mail is considered mail to or from an inmate's attorney and identified as such. *Jensen v. Klecker,* 648 F.2d 1179 (8th Cir.1981).

#### 1. Defendant Capel

 Plaintiff claims that Defendant Capel took personal mail from Plaintiff and had it destroyed. Importantly, Plaintiff does not allege that Defendant Capel interfered with any of her *legal* mail. As a result, Plaintiff's claim that Defendant Capel violated her right to access the courts fails.[5]

---

Dewitt and Leroy Hoots as party Defendants. These individuals, however, are not parties to this lawsuit. On November 12, 2009, 2009 WL 3808539, the Court specifically denied Plaintiff's request to have Mr. Dewitt added as a defendant in this case. (# 360)

4. In her Response to the Defendants' motion, she states that she plans to file a statement of facts. To date, however, Plaintiff has not submitted any such pleading. Although Plaintiff did file "exhibits" in this matter on November 30, 2009, that pleading seems to be a new Complaint containing claims relating

to Plaintiff's child custody case. Accordingly, it was not considered when ruling on the Defendants' motion.

5. To the extent that Plaintiff claims that Defendant Capel violated her first amendment right to send and receive any sort of mail, Plaintiff's claim also fails. Here, Plaintiff does not allege that Defendant Capel intercepted or opened Plaintiff's mail; rather, Plaintiff simply alleges that Defendant Capel confiscated Plaintiff's personal mail after Plaintiff received and reviewed the personal correspondence at issue.

### 2. Defendant Dixon

■ Plaintiff alleges that Defendant Dixon ordered that Plaintiff's mail be confiscated. Plaintiff claims that it is a violation of ADC policy to confiscate mail without a confiscation order. Importantly, however, Plaintiff does not specifically state what mail Defendant Dixon confiscated. In the evidentiary hearing held in this matter, Plaintiff stated that she knew that Defendant Dixon confiscated her "legal mail" because she overheard Defendant Donavion telling Defendant Martin that Defendant Dixon ordered her mail confiscated. (# 338-2 at p. 11–12) Such hearsay is insufficient to defeat a motion for summary judgment. See *Plamp v. Mitchell Sch. Dist. No. 17-2*, 565 F.3d 450, 460 (8th Cir.2009) (citing *Johnson v. Baptist Med. Ctr.*, 97 F.3d 1070, 1073 (8th Cir.1996)).

■ Further, Plaintiff characterizes Defendant Dixon's alleged order that "all Kansas documents and tribunal documents" be removed from Plaintiff's cell as a confiscation order. (# 338-2 at p. 12) Again, Plaintiff fails to allege that this mail was confiscated prior to her receiving and reviewing such correspondence. Because Plaintiff has not alleged that she sustained any actual injury as a result of Defendant Dixon's conduct or that Defendant Dixon denied her the opportunity to review her mail prior to its being confiscated, Plaintiff's claims against Defendant Dixon fail as a matter of law.

### 3. Defendant McGinnis–Douglas

■ Plaintiff alleges that, as mail room supervisor, Defendant McGinnis–Douglas confiscated Plaintiff's legal mail. Plaintiff alleges that although she paid for the postage of various pieces of mail and witnessed these items being sealed, these items were never received by the courts. Plaintiff claims that Defendant McGinnis–Douglas, as the person in charge of the mail room, must have been the individual who interfered with her mail. Plaintiff cannot create a genuine issue of material fact based upon her unsupported beliefs. *de Llano v. Berglund*, 282 F.3d 1031, 1035–36 (8th Cir. 2002). Plaintiff must show the existence of facts in the records to create a genuine material issue. *Larson v. Kempker*, 414 F.3d 936, 939 (8th Cir.2005). Here, Plaintiff has failed to do so. Accordingly, Plaintiff's claims against Defendant McGinnis–Douglas fail as a matter of law.

### 4. Defendants Donavion and Martin

■ alleges that Defendants Donavion and Martin destroyed her court documents and tribal mail during a search of her cell on November 19, 2007. Plaintiff, however, does not state that she suffered any injury as a result of the destruction of any of these documents. Further, Plaintiff does not claim that these documents were destroyed prior to her having reviewed them. As a result, Plaintiff cannot show that Defendants Donavion and Martin interfered with her right to access the court or her first amendment right to access the mail.

### 5. Defendant Steed

■ Plaintiff claims that Defendant Steed stole inmate mail when it is sent to the law library to be copied. Plaintiff testified that Defendant Steed has admitted to stealing inmate mail. Defendants, however, attach to their motion for summary judgment, Defendant Steed's declaration. In the declaration, Defendant Steed states that she has never stolen Plaintiff's mail and that she has "certainly never admitted to doing so." (# 338-6 at p. 1) Plaintiff has failed to come forward with any evidence to contradict Defendant Steed's sworn statement. Although Plaintiff claims that Defendant Steed admitted to engaging in such questionable conduct,

Plaintiff has failed to present any proof to support such an allegation. Further, although Plaintiff claims that Defendant Steed interfered with many of Plaintiff's pending cases, Plaintiff has failed to show that she has suffered any injury as a result of Defendant Steed's alleged conduct. Accordingly, Plaintiff's claim against Defendant Steed fails.

### C. *Excessive Force Claim*

Plaintiff claims that during the search of her cell on November 19, 2007, Defendants Donavion and Martin used excessive force against her. Plaintiff testified that Defendant Martin slammed hand cuffs on her wrists, then Defendant Donavion grabbed her by the arm and dragged her into the shower, fracturing her arm. Plaintiff claims that as a result of this incident, her arm was "black and blue" and that the nerves and veins in her arm were severed. (# 338–2 at p. 23)

■■■■ The Eighth Amendment protects inmates from the unnecessary and wanton infliction of pain by correctional officers, regardless of whether an inmate suffers serious injury as a result. *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). However, "section 1983 is intended to remedy egregious conduct, and not every assault or battery which violates state law will create liability under it." *Askew v. Millerd*, 191 F.3d 953, 958 (8th Cir.1999) (citing *Haberthur v. City of Raymore*, 119 F.3d 720, 723 (8th Cir.1997)). Officers do not violate the Eighth Amendment when they use force reasonably, "in a good-faith effort to maintain or restore discipline." *Hudson*, 503 U.S. at 9, 112 S.Ct. 995.

■■■■ excessive force cases, courts must "determine[ ] whether the force was applied 'in a good faith effort to maintain or restore discipline, or maliciously or sadistically to cause harm.'" *Estate of*

*Davis v. Delo*, 115 F.3d 1388, 1394 (8th Cir.1997) (quoting *Hudson*, 503 U.S. at 6, 112 S.Ct. 995). "Whether a situation justifies the use of force to maintain or restore discipline is a fact specific issue that turns on the circumstances of the individual case or the particular prison setting." *Johnson v. Blaukat*, 453 F.3d 1108, 1113 (8th Cir. 2006) (internal quotations omitted).

#### 1. Defendant Donavion

■■■■ At the hearing held in this matter, Plaintiff testified that on November 19, 2007, Defendant Donavion "grabbed [her] by [her] left arm and dragged [her] out of the room and threw [her] into the shower." (# 338–2 at p. 22) In Defendant Donavion's declaration attached to the Defendants' motion for summary judgment, she states that, because Plaintiff became disruptive during the search of her cell, she and Defendant Martin moved Plaintiff to the shower area. (# 338–3 at p. 2) In Defendant Martin's declaration, she explains that Plaintiff "walked to the shower area on her own and was not drug by [Defendant] Donavion." (# 338–5 at p. 2)

■■■■ Based upon the evidence presented, the Court cannot state that Defendant Donavion violated Plaintiff's eighth amendment rights. First, it appears that the force used was justified given the situation. Because Plaintiff had become disruptive, Defendant Donavion moved Plaintiff away from her cell. Although Plaintiff attempts to create a dispute of fact by claiming that Defendant Donavion "dragged her" to the shower area, she has not presented any evidence that she suffered any injury as a result of Defendant Donavion's conduct. See *Dawkins v. Graham*, 50 F.3d 532, 535 (8th Cir.1995) (to prevail on an Eighth Amendment excessive force claim, the plaintiff must have suffered actual injury). Accordingly, Plaintiff has failed to create

any material dispute of fact and Defendant Donavion is entitled to summary judgment on this claim.

### 2. Defendant Martin

 Plaintiff claims that Defendant Martin "slammed the cuffs onto [her] arm" causing injury. (# 338–2 at p. 26) Although Plaintiff alleges that she suffered nerve damage as a result of this incident, Plaintiff does not provide any evidence to support this allegation. Further, although Plaintiff states that she was diagnosed with a hair line fracture in her arm in April 2008, the incident in which she claims that she was injured indisputably occurred in November of 2007. The Court cannot say that Defendant Martin is the individual responsible for an injury that was not identified until five months after the incident in question. Without injury, Plaintiff's claim fails.[6]

The United States Court of Appeals for the Eighth Circuit considered a similar claim in *Foster v. Metropolitan Airports Commission*, 914 F.2d 1076 (8th Cir.1990). In *Foster*, the plaintiff claimed that handcuffs had been applied too tightly and resulted in nerve damage in his arms. However, the plaintiff presented no medical records indicating that he suffered any long-term injury as a result of the incident. In affirming the grant of summary judgment in the defendants' favor, the Court concluded that allegations of pain, without some evidence of more permanent injury, were insufficient to support a claim of excessive force. *Id.* at 1082.

Similarly, in this case, Plaintiff's allegations are not supported by any medical evidence indicating that the use of the handcuffs caused any permanent injury and are insufficient to establish a claim

that Defendant Martin used excessive force against her.

### D. *Cross Gender Strip Search*

 Here, Plaintiff claims that on November 19, 2007, after she was forcibly removed from her cell and taken to the shower area, Defendants Donavion and Martin instructed Plaintiff to remove her clothing so that they could conduct a strip search. Plaintiff alleges that several male officers were present during this incident and that she was forced to stand nude in front of the male officers for several minutes.

Defendants have attached to their motion the declarations of Defendants Donavion and Martin. In their declarations, these Defendants testify that there were not any male officers present during the strip-search at issue. (# 338–3 at p. 2 and # 338–5 at p. 2)

In *Hill v. McKinley*, 311 F.3d 899 (8th Cir.2002), the Court of Appeals for the Eighth Circuit held that based upon a prisoner's "very narrow zone[ ] of privacy" a female detainee's constitutional rights were not violated when she was required to undress in front of a male guard. *Id.* at 904–05. The *Hill* Court quoted *Johnson v. Phelan*, 69 F.3d 144, 146 (7th Cir.1995), with approval, a case in which the Court of Appeals for the Seventh Circuit had held that cross-gender monitoring of naked prisoners was permissible and that guards were "entitled to watch and regulate every detail of daily life." *Hill*, 311 F.3d at 904–05. See also *Timm v. Gunter*, 917 F.2d 1093, 1102 (8th Cir.1990) ("[w]hatever minimal intrusions on an inmate's privacy may result from [opposite-sex] surveillance, whether the inmate is using the bathroom,

---

**6.** The Court notes that in their declarations, Defendants Martin and Donavion state that Plaintiff never complained of the handcuffs hurting her during the incident in question. (# 338–3 at p. 2 and # 338–5 at p. 1–2)

showering, or sleeping in the nude, are outweighed by institutional concerns for safety and equal employment opportunities").

Here, although there is a dispute as to whether there were actually any male officers present when Plaintiff was instructed to stand nude in the shower area, this dispute is not material. Even if male officers were able to view Plaintiff for a limited time period, Plaintiff's constitutional rights were not violated. Accordingly, Plaintiff's claim fails.

### E. *Deliberate Indifference*

 Prison officials or their agents violate the Eighth Amendment if they commit "acts or omissions sufficiently harmful to evidence deliberate indifference to [an inmate's] serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). "Failure to provide medical care to prisoners amounts to a constitutional violation only when the plaintiffs show '(1) that they suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Hines v. Anderson,* 547 F.3d 915, 920 (8th Cir.2008) (quoting *Dulany v. Carnahan,* 132 F.3d 1234 (8th Cir.1997)). "The prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Alberson v. Norris,* 458 F.3d 762, 765 (8th Cir.2006) (citing *Estate of Rosenberg v. Crandell,* 56 F.3d 35, 37 (8th Cir.1995)).

 When an inmate alleges that a delay in medical treatment rises to the level of an Eighth Amendment violation, "the objective seriousness of the deprivation should also be measured 'by reference to the effect of delay in treatment.'" *Beyerbach v. Sears,* 49 F.3d 1324, 1326 (8th Cir.1995), abrogation on other grounds recognized by *Reece v. Groose,* 60 F.3d 487, 492 (8th Cir.1995) (quoting *Hill v. Dekalb Regional Youth Det. Ctr.,* 40 F.3d 1176, 1188 (11th Cir.1994)). Therefore, the inmate "must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment." *Crowley v. Hedgepeth,* 109 F.3d 500, 502 (8th Cir.1997) (quoting *Hill,* 40 F.3d at 1188); see also *Jackson v. Hallazgo,* 30 Fed.Appx. 668 (8th Cir.2002) (unpub. per curiam) (citing *Coleman v. Rahija,* 114 F.3d 778, 784 (8th Cir.1997) ("[a]n inmate's failure to place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment precludes a claim of deliberate indifference to medical needs"); *O'Neal v. White,* 221 F.3d 1343, *1 (8th Cir. July 12, 2000) (unpub. per curiam) (citing *Crowley,* 109 F.3d at 502) (concluding that plaintiff's "failure to submit verifying medical evidence to show a detrimental effect from any delay in tests, surgery, or alternative treatments was fatal to his Eighth Amendment claim")).

 Here, Plaintiff has admitted that various members of the infirmary staff examined her arm after between November 19, 2007, and December 12, 2007. (# 338–2 at p. 27–28) Most importantly, based upon the evidence presented by Defendants in support of their motion, Plaintiff was apparently examined on the date of the alleged incident, November 19, 2007, and did not complain of any injury. (# 338–12) Further, Plaintiff again was examined on November 27, 2009, based upon Plaintiff's complaints that she could not hold a pen due to problems that she was having with her wrist. (# 338–12) The examining nurse found that Plaintiff had a full range of motion, no swelling, and no discoloration. (# 338–12) Although Plaintiff claims that she suffered a swollen hand, nerve

damage, and a fractured arm, she has failed to come forward with any "verified medical evidence" to support these allegations.

Further, Plaintiff has not come forward with any evidence that Defendants were responsible for her medical care. See *Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir.1997) (to succeed on a medical indifference claim, the claim must be brought against the individual directly responsible for the inmate's medical care). As a result, Plaintiff has failed to create any genuine question of material fact regarding her medical treatment.

### F. *Terroristic Threatening*

 Plaintiff also claims that Defendants Capels and Donavion, verbally abused her.[7] Verbal abuse and mere threatening language from prison officials are not actionable under § 1983. See *McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir.1993); *Hopson v. Fredericksen*, 961 F.2d 1374, 1378 (8th Cir.1992); and *Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir.1985). Although such behavior may be unprofessional, it is not unconstitutional. Plaintiff has not alleged any injury that she sustained as a result of this alleged behavior. Absent such evidence, she has failed to establish a violation of her constitutional rights.

 Further, Plaintiff claims that these Defendants have retaliated against her for filing this lawsuit. This claim also fails. To establish a prima facie case for retaliation, Plaintiff must show that: (1) she exercised a constitutionally protected right; (2) prison officials disciplined her; and (3) her exercise of a protected right

was the motivation for the discipline. *Meuir v. Greene County Jail Employees*, 487 F.3d 1115, 1119 (8th Cir.2007). Plaintiff bears a heavy evidentiary burden to establish a prima facie case. *Id.* (citing *Murphy v. Mo. Dept. of Corr.*, 769 F.2d 502, 503 n. 1 (8th Cir.1985)). She cannot merely allege that an act was retaliatory. *Id.* (citing *Benson v. Cady*, 761 F.2d 335, 342 (7th Cir.1985)).

Here, Plaintiff has not come forward with any evidence to show that she was disciplined as a result of filing this lawsuit. As a result, this claim fails as a matter of law.[8]

### G. *Failure to Protect*

 Here, Plaintiff complains that Defendants Zomant and Faust failed to protect Plaintiff against sexual assaults by inmate Parker. Plaintiff claims that Defendant Zomant was aware that Plaintiff was being sexually assaulted, but failed to remedy the situation.

In their motion, Defendants argue that this claim should be dismissed because Plaintiff failed to exhaust this claim against Defendant Zomant and Defendant Faust has been dismissed as a party Defendant. The Court agrees.

 Congress enacted the Prison Litigation Reform Act ("PLRA") to "reduce the quantity and improve the quality of prisoner suits." *Porter v. Nussle*, 534 U.S. 516, 524, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). The PLRA requires administrative exhaustion prior to the commencement of a lawsuit challenging prison conditions, specifically stating: "No action shall be brought with respect to prison condi-

---

7. At the hearing, Plaintiff testified that William Jones also threatened

8. The Court notes that Defendants attach to their motion, Plaintiff's extensive disciplinary

record. Plaintiff does not dispute that she received these disciplinaries based upon her conduct while confined at the McPherson Unit.

tions under § 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *Booth v. Churner,* 532 U.S. 731, 738, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001) (holding that available remedies "must be exhausted before a complaint under § 1983 may be entertained"). The purposes of the exhaustion requirement include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock,* 549 U.S. 199, 127 S.Ct. 910, 923, 166 L.Ed.2d 798 (2007); see also *Woodford v. Ngo,* 548 U.S. 81, 126 S.Ct. 2378, 2385, 165 L.Ed.2d 368 (2006).

In *Jones,* the Supreme Court clarified that "the level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones,* 127 S.Ct. at 923.

Here, the evidence presented by the parties indicates that Plaintiff did not file a grievance against Defendant Zomant regarding this matter. (# 338–15) Although Plaintiff filed a grievance against Defendant Faust, Defendant Zomant was not mentioned in that grievance. Accordingly, Plaintiff failed to exhaust her administrative remedies regarding this claim against Defendant Zomant.

Further, although Plaintiff did file a grievance against Defendant Faust regarding this matter, Defendant Faust is no longer a party to this lawsuit. (# 326) On May 18, 2009, Plaintiff moved to have Defendant Faust dismissed as a party Defendant. (# 323) The Court granted Plaintiff's motion. (# 326) Accordingly, Plaintiff's claim fails as a matter of law.[9]

### H. *Religious Discrimination*

Plaintiff claims that Defendants Capel, Dixon, Zomant and Donavion discriminated against her based on her religion. Specifically, she complains that these Defendants have: (1) destroyed her Catholic Bible on multiple occasions; (2) prohibited her from bringing her rosary into punitive isolation; and (3) denied her access to a religious self-help book.[10] At the hearing held in this matter, Plaintiff stated that these Defendants informed Plaintiff that the McPherson Unit is a "southern Baptist prison" and that she was not permitted to practice any other religion. (# 338–2 at p. 44–45)

The First Amendment provides that no law shall prohibit the free exercise of religion. *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 348, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987). A prison regulation is valid, even if it restricts an inmate's religious practice, so long as the regulation is "reasonably related to legitimate penological interests." *Murphy v. Mo. Dep't of Corr.,* 372 F.3d 979, 982 (8th Cir.2004) (quoting *Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987)). Courts evaluating first amendment claims

**9.** The Court notes that Plaintiff previously sought to have Defendant Faust reinstated as a party Defendant. (# 350) Plaintiff's motion was denied. (# 360)

**10.** In their motion, Defendants do not address Plaintiff's claims regarding her rosary or her

self-help book. Because the Court does not have the information necessary to rule on this claim, Plaintiff should be allowed to proceed on this claim against Defendants Capel, Dixon, Donavion, and Zomant.

must first consider whether the challenged governmental action infringes upon a sincerely held religious belief. *Murphy*, 372 F.3d at 983. Then, courts must apply a reasonableness test "less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987).

### 1. Defendant Capel

■ Defendants first contend that Plaintiff failed to exhaust her administrative remedies against Defendant Capel for allegedly destroying Plaintiff's Catholic Bible in March 2005. Defendants provide Tiffanye Compton's declaration to support this argument. In the declaration, Ms. Compton testified that Plaintiff failed to appeal her grievance regarding the destruction of her Bible by Defendant Capel. (# 338–15) Plaintiff has not come forward with any evidence to the contrary. Accordingly, Plaintiff's religious discrimination claim regarding the destruction of her Catholic Bible against Defendant Capel fails.

### 2. Defendants Dixon, Donavion, and Zomant

■ Plaintiff testified that Defendants Dixon, Donavion and Zomant told Plaintiff that the McPherson Unit was a southern Baptist prison and that she was prohibited from practicing another religion. (# 338–2 at p. 45) Even assuming that Defendants Dixon, Donavion, and Zomant made this statement, Plaintiff has failed to show how this statement actually prohibited her from practicing Catholicism. As a result, Plaintiff's claim fails.

### 3. Defendants Donavion and Dixon

■ Plaintiff testified that Defendant Donavion was responsible for the destruc-

tion of her Catholic Bible in April of 2007 and in November 2007. Plaintiff testified that Defendant Dixon also was involved with the destruction of Plaintiff's Bible in November 2007. Although Defendants acknowledge this claim in their motion for summary judgment, they do not provide any reason for the alleged conduct of Defendants Donavion or Dixon. Although Defendants attach Defendant Donavion's declaration to the motion, Defendant Donavion states that she has not denied Plaintiff access to her Catholic Bible. (# 338–3 at p. 2) Defendant Donavion does not address Plaintiff's claim that Defendant Donavion destroyed Plaintiff's Catholic Bible.

In their motion, Defendants argue that Plaintiff has always had access to religious materials within the limits of the applicable policy. Defendants, however, again fail to provide any legitimate penological interest for the destruction of Plaintiff's Catholic Bible. Accordingly, at this time, Defendants' motion for summary judgment must be denied with regard to Plaintiff's claim that Defendants Donavion and Dixon violated her right to freedom of religion by destroying her Catholic Bible.

### I. *Violation of ADC Policy*

■ alleges that Defendant Maples failed to respond to her grievances in accordance with ADC policy. Unfortunately for Plaintiff, there is no federal Constitutional liberty interest in having state officers follow state law or procedure. *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir.2003). Thus, Plaintiff's claim fails as a matter of law.

### J. *Conditions of Confinement*

Plaintiff also complains about the conditions of her confinement at the McPherson Unit. Plaintiff complains that there are persistent problems with the plumbing and

the air conditioning in her cell. Plaintiff also testified that waste would seep into her cell daily. (# 338–2 at p. 37–38) Plaintiff identified Assistant Warden Dexter Payne as the individual responsible for these conditions. Plaintiff, however, previously dismissed Mr. Payne from this lawsuit. (# 326) Accordingly, Plaintiff's claim regarding the conditions of her confinement fails.

## IV. *Conclusion:*

The Court recommends that Defendants' motion for summary judgment (# 338) be GRANTED in part, and DENIED in part. Plaintiff should be allowed to proceed on her claims: (1) that Defendants Donavion and Dixon violated her first amendment right to freedom of religion by destroying her Catholic Bible; and (2) that Defendants Capel, Dixon, Zomant, and Donavion violated her first amendment right to freedom of religion by denying her access to her rosary beads and her religious self-help book. Defendants are entitled to summary judgment on all other claims in this lawsuit.

DATED this 16th day of December, 2009.